JAMES W. DUNPHY *vs.* TRAVELLER NEWSPAPER ASSOCIATION & others.

Suffolk.   February 1, 1888. — April 6, 1888.

Present: MORTON, C. J., DEVENS, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Corporation — Equity Pleading — Multifariousness — Laches.*

A bill in equity by a stockholder, for himself and other stockholders, brought against the corporation and a part only of the directors, for wrongful mismanagement, is not maintainable unless it shows that redress has been sought of the corporation itself, or of the existing board of directors, or that such seeking would be useless; and this requirement is not satisfied by an allegation that one of the directors, who is a party defendant, controls the majority of the stock, and elects such a board as he may choose, but with no averment of fraud or misconduct on the part of the other directors.

The joinder, in a bill in equity by a stockholder to secure the payment of dividends, of a request that such be paid out of moneys on hand, and a demand that the corporation should seek the restitution of moneys misapplied by it for the making of further dividends, does not make the bill multifarious.

Such a bill is not maintainable for former dividends wrongfully withheld from certain stockholders not made parties plaintiff.

A bill in equity, filed in December, 1886, alleged that improper investments had been made by a corporation, the last but one being in 1881, as appeared in its books, while the plaintiff was a director or treasurer, but did not aver fraud in the

making or objection, or ignorance on his part; that the salary of the president had been raised for a term ending in 1875; and that a loan of money had been obtained in 1874, upon which interest was thenceforth paid. *Held*, that the plaintiff had been guilty of such laches as to prevent his maintaining the bill.

KNOWLTON, J. The plaintiff brings this bill in equity, filed on December 18, 1886, as a stockholder in the defendant corporation, in behalf of himself and such other stockholders as may join him therein, alleging that Roland Worthington, one of the defendants, is the president and treasurer of said corporation, and is and for a long time has been the owner or controller of a majority of the shares of its capital stock, and by means of his ownership and control has chosen such persons to be directors as he has seen fit; and has improperly used and invested large sums of the money of the corporation in certain specified ways, and has kept other large sums of its money on hand drawing no interest, and has improperly received large amounts as his salary as president of the corporation, and as rent for a building owned by him and occupied by it, and has prevented the making of dividends upon the capital stock, and has otherwise improperly managed the affairs of said corporation, to the great damage of the plaintiff and other stockholders. The plaintiff prays that said Worthington may be directed to render accounts of all his dealings with the assets of the corporation, and to refund all moneys improperly received or paid out by him, and to pay to certain stockholders such sums of money as shall equalize among all the stockholders certain distributions alleged to have been irregularly made among some of them, and to file a correct statement in detail of all the present assets and liabilities of the corporation, and hereafter annually to render accounts of his dealings with it as treasurer so long as he holds that office. He also prays that all funds of the corporation on hand in excess of five thousand dollars be ordered distributed among the stockholders at once, and that the corporation be required hereafter to declare dividends as often as the cash on hand shall equal five per cent of the amount of its capital stock, and for general relief.

Courts of equity are swift to protect helpless minorities of stockholders of corporations from the oppression and fraud of majorities. But the legal relations into which the members of a

corporation enter require them to seek redress for supposed wrongs done them as stockholders from its officers, and from the corporation itself, before applying elsewhere.   Misconduct in dealing with a corporation, or in the management of its affairs, can affect its members only through the corporation itself.   The wrong in such a case is done primarily to the corporation.   It is the duty of its directors or other managing officers to protect it from those who would do it injustice, and to seek compensation for any injury which it receives.   Stockholders in a corporation impliedly agree, when they join it, to act in the corporate business through officers chosen to represent them, or by vote at meetings of the members regularly called.   And so, if they deem themselves aggrieved as shareholders by the dealings of others with it, or by the acts of its managers, they are bound to seek their remedy through corporate channels, first, by application to the officers in charge, and, failing there, secondly, to the corporation itself, at a meeting of its members.   If they can obtain justice at the hands of neither, the courts are open for their relief.

. It would be contrary to the fundamental principles of corporate organization to hold that a single shareholder can at any time launch the corporation into litigation to obtain from another what he deems to be due to it, or to prevent methods of management which he thinks unwise.   Intelligent and honest men differ upon questions of business policy.   It is not always best to insist upon all one's rights ; and a corporation acting by its directors, or by vote of its members, may properly refuse to bring a suit which one of its stockholders believes should be prosecuted.   In such a case the will of the majority must control.   It is only when the action of a corporation in refusing to proceed at the request of a stockholder is fraudulent as against him, or in disregard of his rights, that he can maintain a suit in his own name in the corporate right.   The court cannot interfere with the management of corporations in matters which are properly within their discretion, so long as their discretion is fairly exercised, and it is always assumed until the contrary appears, that they and their officers obey the law, and act in good faith towards all their members.   Even when their acts are *ultra vires*, or otherwise illegal, a complaining member must

first seek his remedy within the corporation. The only exception to the rule that a stockholder must apply to the directors, and also if need be to the corporation, for redress of a wrong done it, before he can sue in a court of equity, for himself and in behalf of other stockholders, is when it appears that such application would be unavailing to protect his rights. *Brewer* v. *Boston Theatre*, 104 Mass. 378. *Allen* v. *Wilson*, 28 Fed. Rep. 677. *Hawes* v. *Oakland*, 104 U. S. 450. *Detroit* v. *Dean*, 106 U. S. 537. *Dimpfell* v. *Ohio & Mississippi Railway*, 110 U. S. 209. *Foss* v. *Harbottle*, 2 Hare, 461. That may happen when the directors themselves are the wrongdoers, or are in fraudulent combination with them, or when the corporation is controlled by them, or when it is necessary that action should be taken *too* speedily *to* leave time for a corporate meeting of stockholders.

In the case at bar there is an averment that Roland Worthington, the alleged wrongdoer, has for a long time controlled a majority of the stock, and has elected such persons directors as he chose. That states a sufficient reason for not applying to the corporation, at a meeting of its members, for action to redress its wrongs. But it is not alleged that the plaintiff ever attempted to move the directors in the interest of the corporation in the matters complained of, or that any good reason existed for his failure so to do. It does not even appear who or how many the directors are. It is said that the defendants Roland Worthington and Roland Worthington the younger are directors, but no others are named. The law provides that there shall be at least three, and it is to be presumed that there are others besides these defendants. Rev. Sts. c. 38, § 3. Pub. Sts. c. 106, § 25. There is no allegation of fraud, or of wrongful combination with Roland Worthington, or of other misconduct, on the part of any of them. And it cannot be presumed, in the absence of such averments, that they would refuse to do their duty if their attention were called to it.

In *Brewer* v. *Boston Theatre*, *ubi supra*, — a much stronger case for the plaintiff than this, — an allegation was in these words : " A majority of the present board of directors of said defendant corporation are acting in the interest of, and are under the control of, Tompkins and Thayer," the authors of the alleged

frauds; and it was held that this allegation did not set forth a sufficient reason for bringing a suit without first requesting the directors to do it.

For the reasons which we have stated the demurrer must be sustained; but inasmuch as the bill may be amended, it may be well to consider some other objections made by the defendants.

It is contended that the bill is multifarious because it joins a claim for a restitution of property to the corporation with a claim for a payment of a dividend, and it is argued that in one part of his case the plaintiff moves through the equity of the corporation against a wrongdoer, and in the other he moves directly against the corporation itself. Looking at these parts of the case as separate proceedings, the argument has great weight. But we think the relief sought should be more broadly viewed. Upon the plaintiff's theory, he and other stockholders have been wronged by a course of proceeding in which all the defendants have participated. The substance of his complaint is, that they have kept from him profits to which he is entitled, and he brings his bill to obtain those profits. He suggests misconduct of the corporation in refusing to make dividends of money which it has on hand, and alleges that Roland Worthington is the author of this misconduct, and has personally joined in it as controller of the corporate action. He suggests that other profits which should have been divided have been kept from him through misconduct of said Worthington in improperly paying out and investing money of the corporation, and in improperly appropriating its money to his own use, and that the corporation has participated in this wrong, in not preventing it nor taking measures to redress it. He prays for a dividend of moneys in the hands of the corporation which it refuses to divide, and of other moneys in the hands of Worthington which it should first obtain and then divide. Both branches of the case are essential to the complete relief of the plaintiff. Worthington and the corporation are parties interested in both, and there is no difficulty in trying both together. We are of opinion that the bill is not multifarious. See *Lenz* v. *Prescott*, 144 Mass. 505; *Pointon* v. *Pointon*, L. R. 12 Eq. 547; *Coates* v. *Legard*, L. R. 19 Eq. 56; *Kennebec Railroad* v. *Portland Railroad*, 54 Maine, 173.

It is obvious that the bill cannot be maintained to obtain payments for the stockholders Morss and Spaulding of the sums which it is alleged should have been paid them when distributions were made to other stockholders in 1869, 1870, and 1871. Their rights in relation to these distributions cannot be affected by this suit. They are not made parties to it, and this plaintiff is not in a position to represent their equity before the court.

It is contended that, as to most of the matters complained of, the bill shows such knowledge and acquiescence on the part of the plaintiff as precludes him from obtaining equitable relief, and that, even if he made objection, he is barred by reason of laches. It is a familiar principle of equity jurisprudence, that long continued acquiescence in a course of conduct by one interested in it, especially when the rights of others are affected thereby, will induce the court to refuse him relief upon his subsequent complaint of it. *Dimpfell* v. *Ohio & Mississippi Railway*, 110 U. S. 209. *Allen* v. *Wilson*, 28 Fed. Rep. 677. *Burt* v. *British Assurance Association*, 4 DeG. & J. 158. *Ffooks* v. *South Western Railway*, 1 Sm. & G. 142. *Graham* v. *Birkenhead Railway*, 2 Macn. & G. 146.

As to the alleged improper investments there is no averment that they were fraudulently made, or that the plaintiff objected to them, or that he was ignorant of them. The presumption is, that he knew of them, and did not object; for they all appear upon the books of the corporation, of which he was a director from 1871 to 1879, and the treasurer from 1879 to 1884, and all but the last of them were made as long ago as 1881, and most of them many years before that time. So long as he was a director, or the treasurer, it was his duty to know of all the investments of the company's money, and to object to them and endeavor to prevent them if they were illegal or improper. In view of his official position, and the lack of any averment or intimation that he objected to these investments until the expiration of more than three years after the last was made, and more than thirteen years after the first during his directorship, he can hardly complain if he is held to have so far acquiesced in them as to have lost his right to recover on account of them. If he intended to rely on them as a cause of action, he has certainly been guilty of laches, and for that reason he cannot be heard to

complain of them at this late day. *Peabody* v. *Flint*, 6 Allen, 52. *Royal Bank of Liverpool* v. *Grand Junction Railroad*, 125 Mass. 490.

These considerations apply also to some of the other matters relied on ; especially to the increase of Worthington's salary as president for a term which ended May 15, 1875, to the loan of money obtained from Job E. Worthington in 1874, and to most of the payments of interest upon it. *Demurrer sustained.*

*W. G. Russell & G. Putnam*, for the defendant.

*J. Lowell & E. M. Johnson*, for the plaintiff.