H. M. GREENSPUN, Plaintiff–Appellant,

v.

DEL E. WEBB CORPORATION, etc. et al., Defendants–Appellees.

No. 78–1900.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 11, 1980.

Decided Dec. 29, 1980.

Vincent H. Chieffo, Beverly Hills, Cal., on brief; Milton A. Rudin, Rudin & Perlstein, Beverly Hills, Cal., for plaintiff–appellant.

Philip R. Higdon, Brown & Bain, Phoenix, Ariz., George A. Cromer, Cromer, Barker & Michaelson, Las Vegas, Nev., W. D. Milliken (argued), Parker, Milliken, Clark & O'Hara, Los Angeles, Cal., Samuel S. Lionel, Lionel, Sawyer & Collins, Las Vegas, Nev., on brief, for defendants–appellees.

Before CHOY, Circuit Judge, KASHIWA,* Court of Claims Judge, and FERGUSON, Circuit Judge.

FERGUSON, Circuit Judge:

Shareholder Greenspun brought a derivative suit against the Del E. Webb Corporation, its directors, and its auditors, Peat, Marwick, Mitchell & Co. The district court

* The Honorable Shiro Kashiwa, Associate Judge, United States Court of Claims, sitting by designation.

granted motions to dismiss in favor of all defendants on the grounds that: (1) the Nevada long–arm statute did not grant personal jurisdiction over any defendant; (2) plaintiff had not made the demand upon the board of directors required by Fed.R. Civ.P. 23.1 or adequately explained this failure; and (3) plaintiff was unable to join the Del E. Webb Foundation, an indispensable party. We hold that personal jurisdiction should have been exercised over defendants Johnson and Peat, Marwick, Mitchell & Co. We further hold that plaintiff did not comply with Fed.R.Civ.P. 23.1. Finally, we hold erroneous the district court's ruling that the Foundation was an indispensible party.

## I. FACTS

Greenspun initiated a shareholder's derivative action for waste and mismanagement against Del E. Webb Corporation (Webb Corp.), an Arizona corporation[1]; its nine directors; director Johnson in his capacity as executor of the Del E. Webb estate[2]; and the corporation's independent auditor, Peat, Marwick, Mitchell & Co. (Peat Marwick), a New York partnership.

Greenspun claimed that the directors of Webb Corp., assisted by Peat Marwick, conspired to preserve Johnson's control over the corporation and to divert its assets to further their interests. In furtherance of the conspiracy, Johnson allegedly misused his authority as chairman of the board of directors, president, and chief executive officer of Webb Corp.; executor of the Del E. Webb estate, which owned a controlling block of Webb Corp. shares; and member of the board of directors of the Del E. Webb Foundation, an Arizona non–profit corporation and beneficiary of the estate.

Greenspun alleged the following acts were committed in furtherance of the conspiracy: (1) defendant Johnson delayed distributing the estate in California so that he could vote its controlling block of Webb Corp. stock; (2) defendant Johnson voted the stock in favor of management proposals at the annual shareholders' meeting in Stateline, Nevada in April, 1975; (3) all but two defendant directors caused Webb Corp. to amend its articles of incorporation to change its board from six members elected annually to nine directors elected in three classes with staggered three–year terms; (4) those same defendants caused the Webb Corp. shareholders to approve an extension of Webb Corp. option warrants, thus diluting shareholders' equity; (5) two defendants not present in Nevada consented to their nomination to the board of directors, while members of the law firm which represented Webb Corp.; (6) acting at a meeting of the executive committee in Las Vegas, defendants Johnson and Nerdrum extended the terms of more than $670,000 in loans which had been made to Johnson and other corporate officers to enable them to take advantage of a stock option program; (7) defendants caused Webb Corp. to fail to disclose adequately the corporation's losses in connection with two community developments outside Nevada; (8) defendants caused Webb Corp. to incur excessive losses without sufficient funds to cover those losses; (9) defendants caused Webb Corp. to fail to develop fully its Nevada hotel and casino properties; and (10) defendants caused diversion of Webb Corp. assets from Nevada in various ways, including the purchase of two parcels of California real estate.

Greenspun met twice with defendants Johnson and the general counsel of Webb Corp. to air his grievances and demand corrective action. He did not meet with the other defendants.

Defendants moved to dismiss for lack of personal jurisdiction and failure to state a claim upon which relief could be granted. The second motion was grounded on plaintiff's failure to set forth with particularity efforts to secure relief from the board of directors under Fed.R.Civ.P. 23.1 and fail-

---

1. Webb Corp. is not involved in this appeal, as it did not move to dismiss.

2. Greenspun has since stipulated to the dismissal of Johnson in his capacity as executor because the California Probate Court discharged Johnson from that position.

ure to join the Del E. Webb Foundation as an alleged indispensible party under Fed.R. Civ.P. 19(b). The district court granted both motions and this appeal followed.

## II. PERSONAL JURISDICTION

### A. *Legal Principles*

■ We have established a two–step test to determine the propriety of asserting personal jurisdiction. First, the relevant state's long–arm statute must permit jurisdiction. Second, the exercise of jurisdiction must be consistent with the demands of due process. *H. Ray Baker v. Associated Banking Corp.*, 592 F.2d 550, 551 (9th Cir.), *cert. denied*, 444 U.S. 832, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 413–414 (9th Cir. 1977).

The first segment of this test requires an analysis of Nevada's long–arm statute.[3] Nevada's interpretation of its statute binds this court. *See Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1286 n. 3 (9th Cir. 1977). Though Nevada has interpreted its statute liberally, *Wells Fargo, supra*, at 415, the statute "clearly contemplates that only causes of action 'arising from' enumerated 'acts' which took place 'within' Nevada may be reached," *id.* at 417. The enumerated acts relevant to this case are business transactions and tortious acts. *See* Nevada Revised Statutes § 14.065(2)(a)–(b). Accordingly, we must determine whether the defendants' actions constituted either business transactions or tortious acts within Nevada.

The second step of our analysis looks to due process concerns. Defendants must have sufficient minimum contacts with Nevada so that an assertion of jurisdiction will not offend notions of fair play. *See Inter-*

*national Shoe v. Washington*, 326 U.S. 310, 311, 66 S.Ct. 154, 156, 90 L.Ed. 95 (1945). A three–pronged test governs our analysis:

(1) The non–resident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum–related activities. (3) Exercise of jurisdiction must be reasonable.

*H. Ray Baker v. Associated Banking Corp., supra*, 592 F.2d at 552, *citing Data Dis., Inc. v. Systems Technology Associates, Inc., supra*, 557 F.2d at 1287.

### B. *Application to the Parties*

The district court failed to make a specific finding as to contacts between each defendant and the state of Nevada, as the above principles require. Rather, it refused jurisdiction on the ground that the tortious acts alleged to have taken place in Nevada occurred in furtherance of a pre–existing out–of–state conspiracy. We must accordingly evaluate each defendant's actions to determine whether Nevada could assert personal jurisdiction over that party.

#### 1. *Peat Marwick*

■ Peat Marwick rendered extensive accounting, auditing, tax, and consulting services and maintained an office in Nevada. Its agents often traveled there to service the Webb Corp. account. These business transactions bring it within the Nevada long–arm statute, Nev.Rev.Stat. § 14.-065.

Peat Marwick purposefully conducted activities in the forum. It was sued for those

---

**3.** Nevada Revised Statute section 14.065 provides:

2. Any person who, in person or through an agent or instrumentality, does any of the acts enumerated in this subsection thereby submits himself and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action which arises from the doing of such acts:

(a) Transacting any business or negotiating any commercial paper within this state;

(b) Committing a tortious act within this state;

\* \* \* \* \* \*

3. Only causes of action arising from these enumerated acts may be asserted against a defendant in an action in which jurisdiction over him is based on this section.

activities. We therefore find jurisdiction over Peat Marwick reasonable and consequently consistent with the demands of due process. *See H. Ray Baker v. Associated Banking Corp., supra*, 592 F.2d at 552.

### 2. *Johnson*

While a director and managing officer of Webb Corp., Johnson entered Nevada to attend an executive committee meeting and a shareholders' meeting. Johnson allegedly received excessive compensation when he and defendant Nerdrum extended the terms of loans made to him at the executive committee meeting. Further, he voted a controlling block of Webb Corp. stock at the shareholders' meeting in order to maintain personal control over the corporation. Johnson also made frequent trips to Nevada, acting as president and chief executive officer of the corporation. These business transactions brought Johnson within the Nevada long-arm statute. With respect to the due process requirement, the stated reasons for finding jurisdiction reasonable with respect to Peat Marwick apply with equal force to Johnson. *See H. Ray Baker v. Associated Banking Corp., supra*, 592 F.2d at 552.

### 3. *Remaining Corporate Directors*

██ The remaining directors did not have sufficient contact[4] with the state of Nevada to support personal jurisdiction. Their contact with Nevada was limited to attendance at a shareholders' meeting at

**4.** Two of those directors did not even enter Nevada.

**5.** Plaintiff alleges he could not plead sufficient facts on this issue because the magistrate permitted the defendants to refuse to answer certain interrogatories. Greenspun claims he was prejudiced by the ruling.

The magistrate's ruling was correct. The defendants gave full information on the jurisdictional issues, *see generally Wells Fargo, supra*, 556 F.2d at 430 n. 24; 4 Moore's Federal Practice ¶ 26.56[6] (1970), and the court's refusal to require further discovery did not result in actual and substantial prejudice to the defendant. *Wells Fargo, supra*, at 430 n. 24. *See Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87, 93 (2d Cir. 1975).

Plaintiff's reliance on *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326,

which they allegedly acted to divert and mismanage corporate assets.[5] The cumulative impact of these acts does not trigger application of Nevada's long-arm statute. *See Abbott v. Second Judicial District Court*, 90 Nev. 321, 526 P.2d 75, 76 (1974). Moreover, the impact of the directors' external acts on the forum is irrelevant to jurisdictional analysis. *Wells Fargo, supra*, 556 F.2d at 417.

## III. COMPLIANCE WITH FEDERAL RULE OF CIVIL PROCEDURE 23.1

██ The district court concluded that Greenspun failed to comply with Rule 23.1 of the Federal Rules of Civil Procedure by not seeking relief from the board of directors prior to filing suit. The rule requires a complaint in a shareholder's derivative suit to

... allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority ... and the reasons for his failure to obtain the action or for not making the effort.

The district court determined that Greenspun failed to make a demand and that such a demand would not have been futile. We must affirm unless the district court abused its discretion in reaching this conclusion with respect to Johnson and Peat Marwick, over whom we have found it had personal jurisdiction. *See De Pinto v. Provident Security Life Ins. Co.*, 323 F.2d 826, 830 n. 7 (9th Cir. 1963), *cert. denied*, 376 U.S. 950, 84

1342–44 (2d Cir. 1972), is misplaced. In *Leasco*, the court needed clarification of conflicting information and wanted the plaintiff to be able to introduce information from interrogatories. Here, the plaintiff has propounded interrogatories and received answers to all jurisdictional questions albeit, with respect to Peat Marwick, only in the form of affidavits. The information before the court does not leave it confused and in need of clarification, as in *Leasco*.

This court follows the rule articulated in *Lehigh Valley Industries, Inc. v. Birenbaum, supra*, 527 F.2d 87, 93–94 (2d Cir. 1975). *Birenbaum* held that a plaintiff must allege specific acts connecting defendant with the forum to support a finding of jurisdiction. Denying discovery which allegedly could have supported a prima facie case of conspiracy was not an abuse of discretion. *Id.*

S.Ct. 965, 11 L.Ed.2d 969 (1964); 3B Moore's Federal Practice, ¶ 23.1.19 (1980 Supp.).

Greenspun met only with Johnson and the general counsel of Webb Corp. to apprise them of the wrongful acts alleged in his complaint. He maintains that he demanded that they cease and desist from such acts and take steps to correct the resulting damage to the corporation. He contends, finally, that defendants refused to comply with his demands and continued their wrongful conduct.

### A. Sufficiency of the Demand

The sufficiency analysis under Rule 23.1 looks to the sufficiency of the content of the demand and the sufficiency of the authority of those to whom the demand is presented. Thus, in order to find compliance with Rule 23.1, the district court must find that the content of the demand which Greenspun presented to Johnson and the general counsel was sufficient. It must also find that Johnson and the general counsel represented the "directors or comparable authority" to whom demand must be addressed under Rule 23.1. If either of these elements is lacking, the district court must then inquire whether a demand sufficient in content and presented to sufficient authority would have been futile.

We hold that the district court did not abuse its discretion in concluding that Greenspun failed to comply with the sufficiency requirements of Rule 23.1. The district court determined that Greenspun failed "in not seeking relief from the board of directors of Webb Corp. before filing suit." We agree that the audience to whom Greenspun presented his demands, the president/director and general counsel of the corporation, was not an authority comparable to the board of directors.[6] Greenspun accordingly failed to comply with Rule 23.1. See, e. g., Shlensky v. Dorsey, 574 F.2d 131, 141 (3d Cir. 1978) (plaintiff must specifically demand that directors bring suit); Halprin

v. Babbitt, 303 F.2d 138 (1st Cir. 1962) (same); 7A C. Wright & A. Miller, Federal Practice & Procedure, § 1831 at 378. See also Brody v. Chemical Bank, 517 F.2d 932 (2d Cir. 1975) (finding of insufficiency grounded in failure of plaintiff to present demands to current director/defendants).

As we uphold the district court's finding that the demand was insufficient because addressed to inadequate authority, we need not consider the demand's additional alleged insufficiency with respect to content. Having found no sufficient demand made, we next turn to whether demand can be excused because futile.

### B. Futility of the Demand

Greenspun did not make any demand on the board to bring action against Johnson or Peat Marwick. Greenspun argues that a demand on the remaining directors to bring suit would have been futile because (1) all of the directors were dominated and controlled by Johnson; (2) they had knowledge of and participated in the alleged wrongful acts; and (3) they would have had to bring suit against themselves.

The district court determined that demand on the remaining directors to bring suit against Johnson and Peat Marwick would not have been futile. The district court's judgment was correct.

■ Plaintiff first alleges that a demand as to Johnson would have been futile because the directors were controlled by Johnson. We adopt the First Circuit's ruling that a bare allegation without factual support cannot excuse demand. See In re Kauffman Mutual Fund Actions, 479 F.2d 257, 264 (1st Cir.), cert. denied, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973). None of Greenspun's ten allegations, see Part I ante, provides prima facie evidence of control by Johnson over his colleagues. We therefore reject as conclusory Greenspun's allegation that demand would have been futile because Johnson exerted control.

---

**6.** Director Johnson stated in an affidavit that the directors had been told of Greenspun's demand and decided there was "no basis for a mismanagement suit." The district court normally looks only at the face of a complaint. See De Pinto v. Provident Security Life Ins.

Co., supra, 323 F.2d at 830. As the record does not indicate whether the district court looked at the affidavit, we do not decide the question of sufficiency of demand on the basis of Johnson's affidavit.

Greenspun's second argument seeks to excuse demand on the basis of the directors' alleged knowledge of and participation in the wrongful acts. Futility requires, however, more than mere approval or participation by directors in alleged wrongful conduct:

> [w]here mere approval of corporate action, absent self–interest or other indication of bias, is the sole basis for establishing the director's "wrongdoing" and hence for excusing demand on them, plaintiff's suit should ordinarily be dismissed.

*Id.* at 265. Such bias appears where there is an allegation that the directors have participated in a transaction "completely undirected to a corporate purpose." *Id.* at 265. *Accord, Heit v. Baird*, 567 F.2d 1157, 1160 (1st Cir. 1977).[7]

Greenspun's allegations fail to disclose acts on the part of the remaining directors which indicate self–interest or which were completely undirected to a corporate purpose. Acts 1, 2, 5, and 6 involve only Johnson and three other directors. These acts accordingly cannot show the self–interest or bias of a majority of the board. Acts 3, 4, and 7–10 contain some• conclusory and some specific allegations as to actions taken by the board of directors. None of these actions particularly favored Johnson, Peat Marwick, or the board. Therefore, no inference of self–interest or bias can arise from them. Moreover, we cannot state on the record before us that any of the alleged actions was completely undirected to a corporate purpose. Accordingly, the directors' knowledge and action did not render them

impervious to demand under Rule 23.1. The task of demanding action under Rule 23.1 is not onerous. No policy recommends eviscerating the demand requirement as plaintiff would have us do.

The claim against Peat Marwick must also be dismissed absent a showing that demand against it would have been futile. *Shlensky v. Dorsey*, 574 F.2d 131, 142 (3d Cir. 1978). As Greenspun has not alleged that demand for action against Peat Marwick would have been futile, we affirm the dismissal of the claim against it.

Plaintiff's final argument for excusing demand is that the directors thereby would have been forced to institute suit against themselves. Because the instant inquiry focuses on the alleged futility of Greenspun's demand on the directors to sue Johnson and Peat Marwick, that argument fails.

## IV. INDISPENSABLE PARTY

The district court erroneously held the Del E. Webb Foundation an indispensable party. The parties concede that the Foundation was not included because it was located in Arizona and not subject to Nevada jurisdiction. Although concededly the court could not grant all the relief requested by plaintiff due to the absence of the Foundation as a party, it could grant other relief. The fact that the plaintiff sought to enjoin the defendant directors from voting the shares of stock which passed to the Foundation is not controlling. Though such an injunction would be prejudicial to the Foundation, the court is not prevented from granting other forms of relief.

In *Anrig v. Ringsby United*, 603 F.2d 1319, 1325–26 (9th Cir. 1978), we discussed

---

7. Other courts require some showing beyond mere participation by the directors before finding that demand would be futile. Plaintiff's reliance on *Cathedral Estates v. Taft Realty Corp.*, 228 F.2d 85 (2d Cir. 1955), is inappropriate. That case involved a clear conflict of interests not shown in this case. *See Dopp v. American Electronic Laboratories, Inc.*, 55 F.R.D. 151, 153–54 (S.D.N.Y.1972) (demand futile where directors were voting to perpetuate themselves in office); *Liboff v. Wolfson*, 437 F.2d 121, 122 (5th Cir. 1971) (demand futile where defendant directors conceded that majority of board met description of ownership

and control); *De Pinto v. Provident Security Life Ins. Co., supra*, 323 F.2d at 831 (demand futile where defendant corporation had demonstrated belated and ineffective concern in litigation). *Compare Meltzer v. Atlantic Research Corp.*, 330 F.2d 946, 948 (4th Cir.), *cert. denied*, 379 U.S. 841, 85 S.Ct. 78, 13 L.Ed.2d 47 (1964) (acts complained of, unlike wrongful acts here, clearly demonstrated to be performed for non–legitimate corporate purpose). *But see Papilsky v. Berndt*, 59 F.R.D. 95, 97 (S.D.N.Y.1973) (demand futile on basis of mere approval of challenged acts by corporate directors).

the four factors of Fed.R.Civ.P. 19(b) which help determine whether a party is indispensable. We held the most relevant of the four factors to be whether a judgment rendered in the person's absence would be adequate and whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. *Id.* at 1326. In light of these two factors, the district court incorrectly found the Foundation an indispensable party. Its absence as a party has not been shown to affect the adequacy of any judgment rendered with respect to the parties.

The judgment of the district court dismissing the action is AFFIRMED.